43699. SATTERFIELD v. THE STATE.
43700. WELDEN v. THE STATE.
43701. ALLISON v. THE STATE.
(351 SE2d 625)

CLARKE, Presiding Justice.

Appellants were jointly tried for the murder of James Hill and the aggravated assault of Pauline Calloway.* The victims Pauline

---

* The crime occurred on April 7, 1983. Appellants were indicted on October 11, 1985 and October 14, 1985. A motion to sever was denied. They were tried jointly and convicted and on November 18, 1985, Satterfield received a sentence of life plus twenty years to be served consecutively; Welden received a sentence of life plus fifteen years to be served concurrently, and Allison received a sentence of life plus ten years to be served concurrently. Satterfield filed a motion for new trial December 4, 1985; his motion was denied and the order filed April 24, 1986. Allison filed a motion for new trial December 16, 1985; his motion was denied

Calloway and James Hill lived in a trailer in Hooker, Georgia. Early in the morning of April 6, 1983, Satterfield, Welden, and Allison entered the trailer. Calloway was awakened by Satterfield and taken at gunpoint into the living room where Welden was standing over Hill with a gun. Hill had been shot and the living room was in disarray. The men questioned Calloway about money and cocaine, and when she said she did not know anything about money and cocaine Satterfield hit her in the face with a shotgun and knocked her to a couch. She was then abducted and taken by the men to Satterfield's house in Alabama. On the way to Alabama, they stopped and Satterfield took Calloway into the woods and forced her to perform oral sex upon him. The other two men returned, and the trio drove Calloway to Satterfield's home from which she escaped when Satterfield passed out.

1. All three appellants contend that the evidence was insufficient to convict them under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Satterfield complains that there was no evidence that he was guilty of murder. Allison contends that there was no evidence linking him to either the murder or the assault. Welden also insists that there was not sufficient evidence to find him guilty of murder.

Satterfield concedes that he was present when the murder was committed but argues that he was not a participant. However, the evidence was sufficient for the jury to find him a party to the crime under OCGA § 16-2-20 and part of a conspiracy to carry out the acts of which the murder was a foreseeable consequence. Therefore he is guilty of the murder even if he did not shoot the victim himself. *Hoerner v. State*, 246 Ga. 374 (271 SE2d 458) (1980); *Gunter v. State*, 243 Ga. 651 (256 SE2d 341) (1979). The evidence showed that Satterfield, along with the other two defendants, drove from Alabama to Georgia for the purpose of robbing the victim. Satterfield was armed with a shotgun. The evidence showed that Welden and Allison borrowed the car used for the trip to Georgia. Welden made statements to witnesses, implicating himself in the affair. The evidence showed that Allison was present at the time of the murder and drove his codefendants back to Alabama with the victim's girl friend. There was ample evidence that Allison was part of the conspiracy to rob the victim and that murder was a foreseeable consequence of the conspiracy. Therefore, the evidence as to each defendant was sufficient for a rational trier of fact to have found the essential elements of the crime of murder beyond a reasonable doubt. *Jackson v. Virginia*, supra.

---

and the order filed April 24, 1986. Welden filed a motion for new trial December 11, 1985, and amended his motion April 14, 1986; the motion was denied and the order filed April 24, 1986. The transcript was certified April 16, 1986. The case was docketed in this court on July 11, 1986 and argued September 17, 1986.

2. All three appellants enumerate as error the failure of the trial court to find that they had been subjected to double jeopardy. According to exhibits attached to their motions to dismiss because of double jeopardy, appellants were indicted in the U. S. District Court for the Northern District of Alabama for kidnapping Pauline Calloway and transporting her in interstate commerce from Georgia to Alabama, a violation of 18 USC § 1201 (a) (1), and for travelling in interstate commerce from Alabama to Georgia with intent to murder James D. Hill for the purpose of extortion in violation of 18 USC § 1952 (a) (2). The Georgia prosecutions were for assault of Pauline Calloway with a deadly weapon and the malice murder of James Hill. Although appellants introduced no evidence at the motion hearing in regard to these federal charges or their disposition, they argue in their briefs that the extortion or racketeering charges were dismissed. Allison and Welden did attach copies of the indictment to their motions. Allison's motion also included as an exhibit the disposition of the kidnapping charge. No evidence was offered by appellants as to the charge of travel with intent to commit murder for extortion charge.

Appellants rely on *Dorsey v. State*, 237 Ga. 876 (230 SE2d 307) (1976) to support their claim that their prosecution in Georgia was barred by the United States Constitution, the Georgia Constitution, and OCGA § 16-1-8. However, that case is readily distinguishable from the present case. In *Dorsey*, supra, the state and the appellant stipulated that the offenses charged in the federal and state indictments were the same and arose out of the same conduct. OCGA § 16-1-8 (c) provides "A prosecution is barred if the accused was formerly prosecuted in a district court of the United States for a crime which is within the concurrent jurisdiction of this state if such former prosecution resulted in either a conviction or an acquittal and the subsequent prosecution is for the same conduct, unless each prosecution requires proof of a fact not required in the other prosecution or unless the crime was not consummated when the former trial began." Clearly, the facts necessary to prove the federal charges of kidnapping and interstate travel with intent to commit murder for extortion are different from the facts necessary to prove the Georgia charges of murder and aggravated assault. There was no violation of Georgia's statutes barring multiple prosecutions, OCGA §§ 16-1-7; 16-1-8, nor of the constitutional prohibitions against double jeopardy. Even if the crimes had been identical appellants would not have been subjected to double jeopardy by the federal trial and the state trial because of the dual sovereignty doctrine. *Heath v. Alabama*, 474 U. S. ___ (106 SC 433, 88 LE2d 387) (1985); *United States v. Lanza*, 260 U. S. 377 (43 SC 141, 67 LE 314) (1922).

3. Each of the appellants here argues that his trial should have

been severed from that of the others. In regard to the issue of severance Satterfield complains in particular about the testimony of Gerald Wayne Phillips, who had conversations with all three appellants. Satterfield argues Phillips' testimony concerning conversations with the other defendants had the effect of implicating him.

Allison contends that severance was required because no witness identified him as a perpetrator or participant in the scheme and other evidence was insufficient to convict him.

Welden argues that severance was mandated as to him because there was evidence introduced by the state which was inadmissible as to him. The introduction of the shotgun which was admitted against Satterfield was, he argues, highly prejudicial as to him.

The question of severance of the trial of defendants for a capital felony where the death penalty has been waived is within the discretion of the trial court. OCGA § 17-8-4. Factors which should be considered in exercising that discretion are (1) whether the number of defendants will create confusion; (2) whether there is danger that evidence against one defendant will be considered against another by the jury despite instructions from the court; (3) whether the defenses of one defendant are antagonistic to defenses of another. *Jones v. State*, 243 Ga. 584 (255 SE2d 702) (1979); *Cain v. State*, 235 Ga. 128 (218 SE2d 856) (1975).

It is incumbent upon the defendant seeking severance to show that he will be prejudiced by a joint trial. It is not enough to claim that he has a better chance of acquittal in a separate trial. Rather, the burden is on defendant to show clear prejudice and in the absence of this showing the trial court's denial of the motion to sever will not be disturbed. *Mulkey v. State*, 250 Ga. 444 (298 SE2d 487) (1983); *Murphy v. State*, 246 Ga. 626 (273 SE2d 2) (1980).

None of the appellants has shown the requisite prejudice to require a reversal based on the trial court's denial of the motions to sever. Phillips, the witness of whose testimony Satterfield particularly complains, was admonished not to mention the name of any co-defendant when testifying as to any statement made to him by a defendant. A review of Mr. Phillips' testimony shows that while he testified as to statements each defendant made to him while they were incarcerated together, he never mentioned another defendant's name when testifying to a statement by one defendant. We have held that this procedure avoids the violation of *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968), which may occur when the confession of one co-defendant implicates another co-defendant. Proper jury instructions and the removal of other defendants' names in the case of interlocking confessions avoids the constitutional confrontation problem of *Bruton. Parker v. Randolph*, 442 U. S. 62 (99 SC 2132, 60 LE2d 713) (1979); *Fortner v. State*, 248 Ga. 107 (281

SE2d 533) (1981); *Casper v. State*, 244 Ga. 689 (261 SE2d 629) (1979). The same is true of testimony as to oral confessions.

None of the appellants has shown how the defenses of the other two are antagonistic to his defense. Appellants rely upon the defense of alibi and non-participation. Allison relies upon the presumption of innocence. These defenses are not mutually exclusive, and no prejudice has been shown from this standpoint in jointly trying appellants.

An argument advanced by Welden as to mandatory severance is that the introduction of a shotgun against Satterfield was prejudicial as to Welden. He argues that this is particularly true inasmuch as the shotgun was ruled inadmissible as to Satterfield in *United States v. Satterfield*, 743 F2d 827 (11th Cir. 1984). The admissibility of the shotgun in a federal trial is irrelevant to the issue of severance. We note, however, that the admission was found harmless by the Eleventh Circuit due to the extent of the evidence against Satterfield. In regard to Welden's argument that the introduction of Satterfield's shotgun implicated him, we find that even if it did implicate him this was no ground for severance since he, as well as Satterfield, was indicted for the aggravated assault for which the shotgun was the weapon.

Allison's blanket assertion that since most of the testimony was not applicable to him he should have been granted a severance is without merit since the state's theory was that the appellants were all part of a conspiracy to rob the murder victim and that the murder was a foreseeable consequence. Any testimony against one conspirator which showed the furtherance of the conspiracy is relevant as to the other conspirators.

4. Satterfield and Allison enumerate as error the court's refusal to grant their motions to suppress the shotgun which was found during a warrantless search. It is undisputed that the search in question occurred after Satterfield and his girl friend, the only occupants of the house, had been placed in police cars. Officers searched the house in Alabama for between five and ten minutes after they had been placed in police cars outside and found the shotgun during that search. The shotgun was used in the aggravated assault on Calloway but was not the weapon used in the murder. The search was not a search incident to an arrest, *Chimel v. California*, 395 U. S. 752 (89 SC 2034, 23 LE2d 685) (1969), nor were any of the other exigent circumstances present which would justify a warrantless search. The introduction of the shotgun was error. However, the error was harmless in view of the other evidence of the aggravated assault upon Calloway. *Chapman v. California*, 386 U. S. 18 (87 SC 824, 17 LE2d 705) (1967).

5. Satterfield complains that the court allowed the state to elicit from a witness the statement that Satterfield told him he had "gone

to rob" the victim and that the statement had not been produced ten days prior to trial. The court ruled that the statement was contained in the state's files which had been made available to the defense. Appellant has shown us nothing which would indicate that the court erred in its finding that the information had been available to appellant in advance of trial in an FBI report. Although the statement was not specifically produced ten days prior to trial as required by OCGA § 17-7-210, we have held that for statements to be discoverable under § 17-7-210, the request must specifically refer to the code section or make it clear that the statements must be furnished ten days prior to trial. *Huguley v. State*, 253 Ga. 709 (324 SE2d 729) (1985). The request here neither referred to the code section nor made it clear that it must be met ten days prior to trial. The request was made pursuant to *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963) and OCGA § 24-10-26 and sought exculpatory material. Further, the court found that the statement was included in the file made available to Satterfield.

6. Satterfield enumerates as error the court's allowing testimony as to sexual acts committed by Satterfield against Pauline Calloway and the court's refusing to allow him to cross-examine her about prior statements made by her in a civil suit filed against Satterfield. He contends that the testimony about sexual acts was irrelevant since it occurred after the murder and the assault. He further complains that it placed his character in issue.

The prior inconsistent statements complained of were alleged allegations in a civil suit that Satterfield, Allison and Welden had repeatedly raped and beaten her. At trial she denied having told a lawyer about any sexual acts except those allegedly committed by Satterfield.

The state is entitled to present evidence of the entire res gestae of the crime. Even though a defendant is not charged with every crime committed during a criminal transaction, every aspect of it relevant to the crime charged may be presented at trial. *Chambers v. State*, 250 Ga. 856 (302 SE2d 86) (1983). This is true even if the defendant's character is incidentally placed in issue.

The enumeration of error regarding the alleged prior inconsistent statements of Calloway is without merit because the court clearly ruled that Satterfield's attorney could question her about the statements but that he could not refer to allegations of a complaint without introducing the document into court.

7. Satterfield insists that his right to a speedy trial has been denied. He contends that he was unable to demand a speedy trial as required by OCGA § 17-7-171 because he was in the federal penal system and unable to assert his rights until a detainer was lodged against him by the state which activated his rights under the Inter-

state Agreement on Detainers, OCGA § 42-6-20 et seq. He contends that it was the state's delay in lodging the detainer which caused him to be denied his right to a speedy trial. Although approximately two years elapsed between his indictment and trial, he was not held by this state for the entire period but was in federal custody for part of that period. He never made any demand for speedy trial prior to trial. Further, he has shown no prejudice as a result of the delay. Consequently, he cannot now contend that his constitutional right to a speedy trial has been denied under the factors discussed in *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972). See also *Perry v. Mitchell*, 253 Ga. 593 (322 SE2d 273) (1984).

8. Allison complains of the sequestering of the jury over his objections and of the exclusion of a juror by the court without a challenge from either party. These matters are within the sound discretion of the court. The excused juror was a grand juror on the jury which had indicted one of the defendants. There was no error in excluding this juror. The court may at any time during a trial order sequestration of the jury except in capital cases. OCGA § 15-12-142. Here the court held a thorough discussion with the attorneys for the defendant and the state as to sequestration. The transcript indicates that the court ordered sequestration to avoid any problems with jurors being contacted about the case.

9. Allison complains that Patricia Holcomb, Satterfield's girl friend, was questioned by the state in regard to a prior statement in which she identified Allison as the driver of a car which came to her house at 4:30 a.m. on April 7, 1983. Allison contends that this line of questioning should not have been allowed since the state was not entrapped by her statement. Under our recent cases a prior inconsistent statement is substantive evidence and is admissible without any showing that the prosecution was surprised or entrapped. *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982); *Burney v. State*, 252 Ga. 25 (310 SE2d 899) (1984). Allison also complains that a proper foundation was not laid for the questions. OCGA § 24-9-83 requires only that the witness' memory be refreshed as to the time, place, person, and circumstances attending the prior inconsistent statement and that written statements be shown to the witness. The proper foundation was laid in this case.

10. During the testimony of Dr. J. Byron Dawson, Allison's counsel made a motion for a mistrial and a continuance because he contended that he had not been furnished with a crime lab report containing exculpatory material regarding the absence of fingerprints of the defendants at the crime scene. However, counsel admitted that he did not believe that the report was wilfully withheld but inadvertently left out of the district attorney's files which were made available to defendants. Although this material should have been furnished

under *Brady v. Maryland,* supra, Allison's counsel was given an opportunity to review the report and question Dr. Dawson about it.

11. Allison contends the trial court incorrectly overruled his motion in limine to prevent testimony of special agent William Land as to a custodial statement attributable to Allison that he was not a mean person but that he had too many friends who got him into trouble. The court found that the statements made to Agent Land were freely and voluntarily made after Allison had been advised of his rights. Although Allison said he did not wish to talk until after he consulted a lawyer, he volunteered the statement in question. He not only complains of the court's allowing this statement but contends that he should have been granted a mistrial because it placed his character in issue.

We find no error in admitting this voluntary statement into evidence. Further, we find that if it placed Allison's character in issue it did so only incidentally. Finally, the statement was not inadmissible as hearsay because it was at least implicitly an admission against interest.

12. In his next enumeration of error Allison insists that the trial court erred in allowing Gerald Wayne Phillips to testify as to a statement made to him by Allison because of insufficient notice to the defendant. The record shows that while appellant did on October 10, 1985, serve the state with a demand for statements under OCGA § 17-7-210, the prosecution did not have this statement before November 7, 1985. Allison was informed on that day of the state's notice of intention to use the statement. Although OCGA § 17-7-210 does provide that a defendant is entitled to statements made by defendant while in custody, subsection (e) provides that the code section would not apply to evidence discovered after a request was filed. Since the prosecution was not aware that Allison had made any statement to Phillips until after Phillips arrived in Georgia for the trial, the statement constitutes newly discovered evidence within the meaning of the code section.

13. Allison complains that his right to cross-examine Pauline Calloway was improperly restricted in that the court ruled that since she had been recalled by another defendant he could not examine her unless Allison made her his witness. He also complains of the court's not allowing his counsel to question her regarding allegations in a civil suit unless the applicable documents were introduced into evidence. Appellant had an opportunity to fully cross-examine this witness when she initially testified. Satterfield and Welden requested she not be excused and that they have the right to recall her for further cross-examination. She was recalled by Satterfield. Allison did not reserve the right to recall her for cross-examination and refused to call her as his own witness. There was no error in the court's refusing to allow

Allison further cross-examination. In regard to the court's insisting on the introduction of applicable documents before questioning as to allegations in a prior civil suit, the attempted questioning was by counsel for a co-defendant and the court's ruling cannot be raised by Allison.

14. In his next enumeration of error Allison contends that the court improperly denied his motion to dismiss based on prosecutorial misconduct. He insists that the prosecution represented to him that the state intended to strike a jury to put Allison in jeopardy then nolle prosequi his indictment and call him as a witness. He contends that because of this promise his defense was not adequately prepared and that he informed the court before trial of this. There is no record of his having informed the court that he was not ready to proceed on this ground. The only ground for a continuance raised by Allison before trial was that he wanted an opportunity to appeal the denial of his motion to dismiss on the basis of double jeopardy. There is nothing in the record to substantiate Allison's claim of any promise that would have caused him to delay preparing his defense.

15. Finally, Allison complains of the court's charges on conspiracy and parties to a crime. He asserts that these charges were in error because of prior adjudication of the conspiracy charge in federal court. These enumerations of error are without merit.

16. Welden enumerates as error the court's refusal to grant him a mistrial, continuance, or severance when his co-counsel was arrested during the trial. He contends that he suffered a denial of due process and ineffective assistance of counsel as a result. He argues that the court knew on November 7, 1985, that appellant's co-counsel would probably be indicted or arrested on a federal indictment during the week of appellant's trial, which was scheduled to begin November 11. The arrest occurred on November 15, the fifth day of trial. Welden's co-counsel contended that he was not able to go ahead and moved for a continuance, severance, or mistrial. He stated that he and the co-counsel, both of whom had been appointed by the court, had divided the responsibility for the trial and that the other attorney was lead counsel. The court found that two attorneys had been appointed for Welden one month prior to trial and that it was expected that either would be prepared to proceed with the case. The court determined that all defense witnesses had been subpoenaed and adjourned court for two hours to allow Welden's remaining attorney, Mr. Goulart, an opportunity to interview them. When trial resumed, Mr. Goulart presented six witnesses, including appellant, and made a closing argument. There is no merit in appellant's argument that he was deprived of due process or effective assistance of counsel by being deprived of the services of one of his attorneys.

17. Finally, Welden argues that his character was impermissibly

placed in issue by the testimony of prosecution witness Phillips in that Phillips testified that he had the relevant conversation with Welden while in jail in Alabama. Welden's character was placed in issue if at all only peripherally. The jury must have known that he was placed in jail when arrested for the offenses for which he was on trial.

*Judgments affirmed. All the Justices concur.*

DECIDED JANUARY 14, 1987.

*John R. Emmett,* for appellant (case no. 43699).
*Ronald C. Goulart,* for appellant (case no. 43700).
*James A. Meaney III,* for appellant (case no. 43701).
*David L. Lomenick, Jr., District Attorney, James D. Franklin, Assistant District Attorney, Michael J. Bowers, Attorney General, J. Michael Davis, Assistant Attorney General,* for appellee.